IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| FRED W. HARVEY, et al. ) | |
| ) | |
| v. ) | |
| ) | |
| TUAN T. TRAN, et al. ) | |
| ) | |
| ) | No. 2:04-0089 |
| ) | Magistrate Judge Brown |
| INSURANCE COMPANY OF THE STATE ) | |
| OF PENNSYLVANIA ) | |
| ) | |
| v. ) | |
| ) | |
| FRED W. HARVEY, et al. ) | |

**M E M O R A N D U M**

This civil action is before the undersigned for all further proceedings, pursuant to the consent of the parties and the order of District Judge Haynes (Docket Entry Nos. 66, 68).

Currently pending before the Court are three motions for summary judgment, filed by Economy Premier Assurance Company ("Economy"), Central Mutual Insurance Company ("Central"), and Phoenix Insurance Company ("Phoenix"), respectively (Docket Entry Nos. 71, 74, and 77). For the reasons given below, the Court will GRANT Central and Phoenix's motions, and DENY Economy's motion. An appropriate Order will enter.

1

# I. BACKGROUND

The facts giving rise to this lawsuit and relevant to the pending summary judgment motions are undisputed (see Docket Entry Nos. 80, 82, 83, 86, 87). All three motions are properly supported.

On September 12, 2004, in Smith County, Tennessee, a tractor-trailer operated by defendant Tuan Tran collided with a tractor-trailer operated by plaintiff Fred Harvey and a passenger vehicle operated by Elizabeth Stephens. Elizabeth Stephens and Elizabeth Upchurch (Mrs. Stephens' mother and passenger) suffered fatal injuries in the accident. The passenger vehicle being operated by Mrs. Stephens was owned by Christine Upchurch.

Plaintiffs Fred and Sharon Harvey filed this action seeking to recover for personal injuries sustained in the accident. Wrongful death claims were asserted to recover for the deaths of Elizabeth Upchurch and Elizabeth Stephens. Phuong Thanh Nguyen, a passenger in defendant Tran's tractor-trailer, also made a claim for personal injuries suffered in the accident. Insurance Company of the State of Pennsylvania ("Pennsylvania"), the liability carrier for defendant Tran's employer, filed a complaint in interpleader in which it admitted that it owed its policy limits of $1,000,000.00 as a result of the accident. Pennsylvania paid these proceeds into Court. Economy is the uninsured/underinsured motorist ("UM") carrier for Christine

2

Upchurch, with coverage limits of $300,000.00. Central is the UM carrier for the estate of Elizabeth Stephens, with coverage limits of $500,000.00. Phoenix is the UM carrier for the estate of Elizabeth Upchurch, with coverage limits of $300,000.00.

All parties to this action reached a settlement agreement, entered September 19, 2005 (Docket Entry No. 61), as to the disbursement of the interpled liability insurance proceeds, as follows: Fred W. Harvey and Transam Trucking - $390,000.00; Sharon Jeanette Harvey - $200,000.00; Estate of Elizabeth Stephens - $250,000.00; Estate of Elizabeth Upchurch - $100,000.00; Phuong Thanh Nguyen - $35,000.00; Transam Trucking (property damage) - $25,000.00.

Phoenix and Economy paid an additional $200,000.00 to the estate of Elizabeth Upchurch to reach her UM limits of $300,000.00. Central and Economy paid an additional $250,000.00 to the estate of Elizabeth Stephens to reach her UM limits of $500,000.00. The sole remaining issue before this Court is which UM carrier is responsible for how much of the additional $450,000.00 paid to the decedents' estates as part of the settlement.[1] The UM carriers agree that there are two possible options for UM liability to the estate of Elizabeth Stephens:

---

[1] There were two other issues that were not resolved by the September 19, 2005 settlement: Fred Harvey's workers' compensation claim and his dispute with Transam Trucking, Inc., over attorneys' fees related to the latter's workers compensation lien in this matter. The workers' compensation claim is not before this Court, and the attorneys' fees issue was resolved by separate settlement entered September 20, 2005 (Docket Entry No. 64).

3

either Central is responsible for $200,000.00 and Economy is responsible for $50,000.00, or Central is responsible for all $250,000.00. The UM carriers also agree that there are two possible options for UM liability to the estate of Elizabeth Upchurch: either Economy is responsible for all $200,000.00 and Phoenix is responsible for none, or Phoenix is responsible for all $200,000.00 and Economy is responsible for none.

## II. DISCUSSION

### A. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment may be rendered if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." Here, it is agreed by all parties that the case is ripe for summary judgment on the purely legal question of contract interpretation, with no material factual issues remaining for trial.

### B. Statutory and Contract Provisions at Issue

The parties agree that Tennessee law applies here, both in its statutory regime of priorities and allowances regarding UM carrier liability, and in its rules of contract construction.

The Tennessee statutes regarding financial

4

responsibility and uninsured motor vehicle coverage, as relevant to the UM coverage issue presented here, provide as follows:

- Tenn. Code Ann. § 56-7-1201(a) states that every automobile liability insurance policy issued or renewed shall include uninsured motorist coverage, with limits equal to the bodily injury liability limits stated in the policy, unless any named insured rejects in writing such coverage completely or selects lower limits of such coverage, though the limit selected cannot be lower than the minimum coverage limits in § 55-12-107.

- Tenn. Code Ann. § 55-12-107(a) states that any such insurance policy, in order to be effective, must "provide[] security not less than the amounts specified in § 55-12-102."

- In turn, Tenn. Code Ann. § 55-12-102(12)(C)(i) states that "proof of financial responsibility," if required after December 31, 1989, means "[a] written proof of liability insurance coverage provided by a single limit policy with a limit of not less than sixty thousand dollars ($60,000) applicable to one (1) accident".

- Tenn. Code Ann. § 56-7-1201(d) states that "[t]he limit of liability for an insurer providing uninsured motorist coverage under this section is the amount of that coverage as specified in the policy less the sum of the limits

5

collectible under all liability and/or primary uninsured motorist insurance policies, bonds, and securities applicable to the bodily injury or death of the insured."

- Tenn. Code Ann. § 56-7-1205 states that the forms of UM coverage provided by law cannot be required "to afford limits in excess of those that would be afforded had the insured thereunder been involved in an accident with a motorist who was insured under a policy of liability insurance with the minimum limits described in § 55-12-107, or the uninsured motorist liability limits of the insured's policy if such limits are higher than the limits described in § 55-12-107." The statute further states that "[s]uch forms of coverage may include such terms, exclusions, limitations, conditions, and offsets, which are designed to avoid duplication of insurance and other benefits."

- As to the priorities of recovery among multiple UM insurers, the following provisions of Tenn. Code Ann. § 56-7-1201(b)(3) control in this case: "With respect to bodily injury to an insured while occupying an automobile not owned by the insured, ... (A) The uninsured motorist coverage on the vehicle in which the insured was an occupant shall be the primary uninsured motorist coverage; (B) If uninsured motorist coverage on the vehicle in which the insured was an occupant is exhausted due to the extent of compensatory

6

damages, then the uninsured motorist coverage provided by a
policy under which the insured is a named insured shall be
applicable as excess coverage..."

There is no dispute that, pursuant to the statutory priorities, Economy is the first in line with respect to UM coverage, as the vehicle occupied by Elizabeth Stephens and Elizabeth Upchurch was a covered vehicle under the Economy policy. Accordingly, while Christine Upchurch is the named insured on the Economy policy, Elizabeth Stephens and Elizabeth Upchurch are deemed insureds for purposes of UM coverage. The following language from the Economy policy (Docket Entry No. 71, Exh. B, pp. 11-12 of policy) pertains here:

We will pay damages for bodily injury sustained by:

> ...
>
> 2. any other person, caused by an accident while occupying a covered automobile, who is legally entitled to collect from the owner or driver of an underinsured motor vehicle.

***

> **LIMIT OF LIABILITY**
>
> The limit of liability shown in the Declarations for "each person" is the most we will pay for all damages, including damages for care, loss of consortium, emotional distress, loss of services or death, arising out of bodily injury sustained by any one person as the result of any one accident. Subject to this limit for "each person", the limit shown in the Declarations for "each accident" for bodily injury liability, is the most we will pay for all damages, including damages for

7

care, loss of consortium, emotional distress, loss of
services or death, arising out of bodily injury
sustained by two or more persons resulting from any one
accident.[2] This is the most we will pay regardless of
the number of:

1. covered persons;

2. claims made;

3. vehicles or premiums shown in the Declarations; or

4. vehicles involved in the accident.

**REDUCTIONS**

The lesser of the limits of this insurance or the
amount payable under this coverage will be reduced by
any amount:

1. paid by or on behalf of any liable parties.

### C. Conclusions of Law

Under Tennessee law, contracts are to be enforced as written. Tenn. Code Ann. § 47-50-112; see also Grubb & Ellis/Centennial, Inc. v. Gaedeke Holdings Ltd., 401 F.3d 770, 774 (6th Cir. 2005). When construing contracts, courts are "to give effect to the expressed intention of the parties by construing the [contract] fairly and reasonably and by giving the [contract's] language its common and ordinary meaning." Black v. Aetna Ins. Co., 909 S.W.2d 1, 3 (Tenn. Ct. App. 1995). When the contract language is unambiguous, the court must "interpret it as

---

[2] The policyholder here did not elect "each person" coverage, but only "each accident" coverage in the amount of $300,000.00.

8

written rather than according to the unexpressed intentions of one of the parties." Pitt v. Tyree Org. Ltd., 90 S.W.3d 244, 252 (Tenn. Ct. App. 2002). Ambiguous contract language is to be construed against the drafter. Vantage Technology, LLC v. Cross, 17 S.W.3d 637, 650 (Tenn. Ct. App. 1999). A contract is ambiguous "when it is of uncertain meaning and may fairly be understood in more ways than one." Empress Health and Beauty Spa, Inc. v. Turner, 503 S.W.2d 188, 190-91 (Tenn. 1973).

Here, Economy argues that the policy language in the "Limit of Liability" and "Reductions" provisions unambiguously allows it to set off all amounts paid by the tortfeasor's liability carrier to the estates of both decedents, against its liability under the three hundred thousand dollar "each accident" coverage. If the damages paid by the liability carrier are aggregated, Economy would have a setoff greater than its policy limit of three hundred thousand dollars, and would therefore have no UM liability.

However, Central and Phoenix argue that Economy's argument is precluded by a 1994 decision of the Tennessee Court of Appeals, Higgenbottom v. Continental Cas. Co., 1994 WL 312871 (Tenn. Ct. App. July 1, 1994)(unpublished opinion). They argue that this Court is bound to follow the Higgenbottom decision, noting that a federal court sitting in diversity must apply the law of the state's highest court, and in the absence of such law,

9

"the federal court must ascertain from all available data what the state law is and apply it." Clutter v. Johns-Manville Sales Corp., 646 F.2d 1151, 1153 (6th Cir. 1981). "If the state appellate court announces a principle and relies upon it, that is a datum not to be disregarded by the federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." Id.

The parties agree, and upon its own research the Court would concur, that the Higgenbottom decision is the only state authority on the precise issue presented here. Economy argues that this decision is not controlling because it is unpublished, and Central/Phoenix concede that it is only persuasive authority. Indeed, the Court would question whether the state appellate court "announces a principle" at all when it declines to designate the decision for publication in a reporter; undoubtedly the Clutter court in 1981 would not have thought so.

However, this Court does have electronic access to this opinion on an issue of first impression in Tennessee, and Economy's only offering of "other persuasive data that the highest court of the state would decide otherwise" is counsel's speculation. This speculation is based on the argument that the only way the Higgenbottom court was able to reach its conclusion was to change the actual language of the policy at issue. As explained below, the Court finds this argument to be flawed, and

10

regardless of the weight properly assigned Higgenbottom, this Court would reach the same interpretation of the policy language at issue, even without the state court's guidance.

Before reaching the policy language at issue here, the Court notes that the Higgenbottom court was presented with an issue that is not presented here: the extent to which disallowing the aggregation of liability proceeds conflicts with Tenn. Code Ann. § 56-7-1205. The Court of Appeals found no conflict, citing four grounds for this finding. First, the court noted that the statutory language included the singular term "the insured," as opposed to the plural "the insureds," and thus would not allow for the insurance company's interpretation that the allowable setoff from the policy limits was the total paid to the aggregate of insureds. Second, the court noted that the claims of Mrs. Higgenbottom and her husband were separate and independent causes of action, either of which could have been maintained alone, but which were tried together only as a result of coincidence. Third, the court found that to reduce Mrs. Higgenbottom's coverage by the amounts paid by liable parties to both her and her husband would be "to bring the coverage afforded by the policy to less than the statutory minimum." 1994 WL 312871, at *2. Finally, the court found that the plain terms of the statute limited the allowable setoffs to those "designed to avoid duplication of insurance and other benefits," Tenn. Code Ann. §

11

56-7-1205, and that "[t]here is no showing that there are any duplications of insurance or other benefits flowing to Mrs. Higgenbottom."  1994 WL 312871, at *2.

While the Court has not discovered any additional data to indicate that the Tennessee Supreme Court would decide the statutory interpretation issue differently, it is noted that the findings of the Court of Appeals on this issue are not particularly compelling.  First, it does not appear that the term "the insured" is necessarily singular or plural.  While the use of the term "the insureds" would of course have clarified matters, the language of Tenn. Code Ann. § 56-7-1205 does not admit to either a singular or plural reference, except insofar as it refers to "the insured's policy," as opposed to "the insured's policies."  In any event, "[i]t is a well-settled rule of statutory construction that words used in their singular include also their plural."  <u>Medley v. American Economy Ins. Co.</u>, 654 N.E.2d 313, 315 (Ind. Ct. App. 1995)(applying rule to "insured" versus "insureds").  This rule was codified by the Tennessee legislature at Tenn. Code Ann. § 1-3-104(c), where it is stated that "Singular includes the plural and the plural the singular, except when the contrary intention is manifest."  While it may well be that the intention to refer only to the singular insured would be manifest upon an examination of the entire statutory scheme applicable to UM coverage, no such examination was

12

undertaken by the court of appeals.  While the appellant in Higgenbottom only argued the perceived conflict with § 56-7-1205, it appears that the singular versus plural distinction would be potentially dispositive of this issue if examined vis-à-vis the statutory UM liability cap, § 56-7-1201(d).[3]  But again, this issue was not raised or addressed in the state court, and has not been raised here.

Also, while the claims of the Higgenbottoms (and the deemed insureds here) are indeed separate causes of action, the "merely coincidental" fact that they arose from the same accident would appear to unite them, perhaps unavoidably, under the applicable "each accident" coverage at issue.  In other words, while these claims might technically have been maintained alone, they are dependent upon one another because of the $300,000.00 coverage limit in Higgenbottom and here, with perhaps the true coincidence being that in both cases, the aggregate amount of underinsurance recoverable by all insureds was still below $300,000.00.

With respect to the state court's finding that aggregating claims would reduce Mrs. Higgenbottom's coverage to less than the statutory minimum, that finding is based on a

---

[3] As noted above, this section provides that "[t]he limit of liability for [a UM insurer] is the amount of that coverage as specified in the policy less the sum of the limits collectible under all liability and/or primary uninsured motorist insurance policies, bonds, and securities applicable to the bodily injury or death of the insured."

13

flawed reading of the statutes. The <u>Higgenbottom</u> court quotes a decision of the Tennessee Supreme Court, <u>Terry v. Aetna Cas. & Sur. Co.</u>, 510 S.W.2d 509 (Tenn. 1974), as follows:

> It results, and we so hold, by enactment of T.C.A. § 56-1152 [now T.C.A. § 56-7-1205] as a section of our uninsured motorist statutes, it is the legislative purpose to provide an insured motorist a right of recovery under the uninsured motorist provisions of his policy only up to the statutory required minimum (T.C.A. § 56-1148) [now T.C.A. § 56-7-1201], and provisions in such policies, approved by the Commissioner of Insurance, operating to reduce such coverage where other coverage or benefits are available to the insured arising from the accident causing the loss, are valid *if such provisions do not operate to deny payments to an insured of less than the statutory minimum*. (Emphasis added).

The <u>Higgenbottom</u> court then went on to find that "[t]he statutory minimum of T.C.A. § 56-7-1201 is equal to the bodily injury liability limits stated in the policy unless the insured elects lower limits," leading it to conclude that any offset from Mrs. Higgenbottom's elected limit of $300,000.00 would amount to a denial of payment of the statutory minimum. 1994 WL 312871, at *2.

However, while § 56-7-1201(a)(1) does state that "[t]he limits of such uninsured motorist coverage shall be equal to the bodily injury liability limits stated in the policy," it is clear that both § 56-7-1201 and § 56-7-1205 refer to the minimum limits "described in § 55-12-107." Section 55-12-107(a) provides that "[n]o policy or bond shall be effective ... unless such policy or bond provides security not less than the amounts specified in §

14

55-12-102." In turn, § 55-12-102(12)(C)(i) states that proof of financial responsibility, if required after December 31, 1989, means "[a] written proof of liability insurance coverage provided by a single limit policy with a limit of not less than sixty thousand dollars ($60,000) applicable to one (1) accident." This $60,000.00 limit is the statutory minimum to which the insured is entitled regardless of applicable offsets, exclusions, limitations, etc. See, e.g., Soren v. Ezelle, 737 F.Supp. 49, 50 (M.D. Tenn. 1990). Accordingly, since the offsets applicable in Higgenbottom (as here) would not have operated to bring either claimant's recovery below $60,000.00, this factor should not have been cited as bolstering the state court's conclusion.

Finally, it is clear that the applicable setoffs for liability proceeds, workers compensation and the like are "designed to avoid duplication of insurance and other benefits." Tenn. Code Ann. § 56-7-1205. The state court's requirement that the insurance company make a particularized showing of such duplication in order to demonstrate a result at odds with the statute is not inherent in the statutory language itself.

Notwithstanding these deficiencies, as noted above, the parties to this action have not raised this issue of conflict with the statutory scheme. As framed by the parties, the issue here is purely one of contract interpretation. While Economy argues that its interpretation, allowing aggregation, is

15

consistent with Tenn. Code Ann. § 56-7-1201(d) and the recent Tennessee Supreme Court decision construing it, Poper v. Rollins, 90 S.W.3d 682 (Tenn. 2002), it does not appear to the Court (nor is it directly argued) that the contrary interpretation would be at odds with that statute. As noted above at footnote two, § 56-7-1201(d) caps a UM insurer's liability at its coverage limits less the sum of the collectible limits from all liability and primary UM policies applicable to the damages of "the insured." While this language does address "the sum" of the limits under "all" policies, it does not purport to limit liability on account of "all" insured, and would therefore support either of the opposing views regarding aggregation.[4] The Tennessee Supreme Court's opinion in Poper does not suggest otherwise.

The policy language here and in Higgenbottom is virtually identical in all relevant respects. Both policies require that any amounts "payable under this coverage" be reduced by sums paid by or on behalf of liable parties. As noted by the Higgenbottom court, this language does not specify whether reduction is to be made based on sums paid by liable parties to **all insureds**, or based on sums paid by liable parties to **the individual insured** who is claiming under the policy.

Economy argues that the construction urged by Central

---

[4] As discussed above, it has not been argued in the state courts or in this Court that the language of § 56-7-1201(d) precludes aggregation by its use of the term "the insured," in the plural.

16

and Phoenix would be a strained one, given the fact that the "Reductions" provision immediately follows language framing the limit of liability for "each accident" regardless of the number of "covered persons" or "claims made." However, the Court finds that the "Limits of Liability" and "Reductions" provisions can be read in harmony regardless of the interpretation of the latter as allowing or disallowing aggregation. The "Limits of Liability" provision clearly establishes, and it is not contested here, that the most Economy stands to lose as a result of the accident in this case is $300,000.00, whether that amount is payable in toto to the estate of one decedent, or is apportioned between the estates of both decedents. Disallowing the aggregation of monies paid in liability under the "Reductions" provision does not eviscerate Economy's protections under the "Limits of Liability" provision.

While Economy argues that the result in Higgenbottom was reached only after adding language to the policy, i.e., construing the policy as if it allowed a setoff for "all sums paid to the person claiming under the policy because of the bodily injury," 1994 WL 312871, at *3, that is not the case. Rather, the Higgenbottom court reached this construction in accordance with the law, after finding more than one reasonable construction of the subject language, by essentially holding that the ambiguity in the contract required its construction against

17

the drafter: "In the case under consideration, it is reasonable to assume that if the maximum benefits payable under the policy were intended to be reduced by the amount paid *all insureds*, it would have said so." 1994 WL 312871, at *4.

Here too, the "Reductions" provision is ambiguous, and under Tennessee law, that ambiguity must be resolved in favor of the insured. Vantage Technology, LLC v. Cross, 17 S.W.3d 637, 650 (Tenn. Ct. App. 1999). Thus, the Court holds that each estate's liability recovery is to be set off against the $300,000.00 UM coverage, rather than a setoff of the total amount of liability recovery by both estates. Cf. Greiner v. Mutual of Enumclaw Ins. Co., 986 P.2d 643 (Or. Ct. App. 1999); DeLeon v. Western Res. Mut. Cas. Co., 1999 WL 84653 (Ohio Ct. App. Feb. 1, 1999); Radenbaugh v. Motorists Ins. Co., 621 N.E.2d 1301 (Ohio Ct. App. 1993). The language of the Economy policy could have directed otherwise, but does not.[5]

Accordingly, Economy is liable to the estate of

---

[5] While true in theory (and for purposes of the issue before the Court) that Economy or any other insurance company could expressly provide for a setoff of all sums paid to anyone as a result of a particular accident, the Court would note that public policy might dictate otherwise, in light of the priorities established by Tenn. Code Ann. § 56-7-1201. In particular, § 56-7-1201(b)(2) directs that "[w]ith respect to bodily injury to an insured while occupying a motor vehicle owned by such insured, only the limits of uninsured motorist coverage on the vehicle in which the insured was an occupant shall apply." If, for instance, Economy's named insured had been in the car at the time of the accident here, policy language directing the aggregation of amounts paid by liable parties to all insureds would have left the named insured with a reduced share of her policy proceeds and no further recourse for her damages, while the car's other occupants would be able to seek their own policy's underinsurance proceeds after helping exhaust Economy's coverage. Such a result, working a detriment to the named insured, would seem to be fundamentally unfair.

18

Elizabeth Stephens in the amount of $50,000.00, and Central is liable to the estate of Elizabeth Stephens in the amount of $200,000.00. Economy is liable to the estate of Elizabeth Upchurch in the full underinsured amount of $200,000.00.

### III. CONCLUSION

In light of the foregoing, Economy's motion for summary judgment will be DENIED, and the summary judgment motions of Central and Phoenix will be GRANTED.

An appropriate Order will enter.

 /s/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge